UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,　　　: 23CR378(RPK)
　　　　　　　　　　　　　　　　:
　　　　Plaintiff,　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　-against-　　　　　　　　: United States Courthouse
　　　　　　　　　　　　　　　　: Brooklyn, New York
WALDROP ET AL,　DEFT. 1 -　　　:
JOHN WALDROP,　　　　　　　　　:
　　　　　　　　　　　　　　　　: Monday, August 12, 2024
　　　　Defendant.　　　　　　　: 11:00 a.m.
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:

- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR A SENTENCING
BEFORE THE HONORABLE RACHEL P. KOVNER
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government:　　　UNITED STATES ATTORNEY'S OFFICE
　　　　　　　　　　　　　Eastern District of New York
　　　　　　　　　　　　　271 Cadman Plaza East
　　　　　　　　　　　　　Brooklyn, New York 11201
　　　　　　　　　　　　BY:ANNA KARAMIGIOS, ESQ.
　　　　　　　　　　　　　Assistant United States Attorney

For the Defendant:　　　ARNOLD & PORTER KAYE SCHOLER LLP
　　　　　　　　　　　　　250 West 55th Street
　　　　　　　　　　　　　New York, NY 10019
　　　　　　　　　　　　BY:PAUL J. FISHMAN, ESQ.
　　　　　　　　　　　　　HARRY KINSLER FIDLER, ESQ.
　　　　　　　　　　　　　MICHAEL J. MOORE, ESQ.

Court Reporter:　　**SOPHIE NOLAN**
　　　　　　　　　　225 Cadman Plaza East/Brooklyn, NY 11201
　　　　　　　　　　**NolanEDNY@aol.com**
*Proceedings recorded by mechanical stenography, transcript produced by Computer-Aided Transcription*

(In open court.)

(The Hon. Rachel P. Kovner, presiding.)

(Defendant present.)

THE COURTROOM DEPUTY: *United States of America versus John Waldrop.* Counsel, state your name for the record.

MS. KARAMIGIOS: Anna Karamigios for the Government. I'm joined by Ryan Connors from Environmental Conservation. Good morning, Your Honor.

MR. FISHMAN: Paul Fishman and Harry Fidler from Arnold & Porter Kaye Scholer on behalf of Dr. Waldrop.

THE COURT: Good morning.

MR. MOORE: Good morning, Your Honor. I'm Michael Moore, local lawyer from Georgia.

THE COURT: Great. Everybody can be seated.

So I understand Mr. Waldrop is going to plead guilty to counts one and five of the indictment; is that right?

MR. FISHMAN: That's correct, Your Honor.

THE COURT: And that's right from your perspective as well Mr. Waldrop?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. This is a serious decision and I have to make certain that you're making that decision with the understanding of your rights and the consequences of a guilty plea. So I'm going to explain those rights today and then there are some questions that I have to ask to establish

that this is a valid guilty plea.  If you don't understand any of my questions, just let me know and I'll rephrase the question, okay?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  If you want at any point to take a break to consult with your attorneys, just let me know because I can take a break to allow to do that.  Okay?

THE DEFENDANT:  Thank you, Your Honor.

THE COURT:  I will need you to answer questions under oath as part of today's proceeding.

So I'll ask Mr. Chan to swear in Mr. Waldrop.

THE COURTROOM DEPUTY:  Please raise your right hand. Do you swear that your answers to the Court' questions will be the truth, the whole truth and nothing but the truth, so help you God?

THE DEFENDANT:  I do.

(Defendant sworn.)

THE COURT:  Do you understand that you are now under oath and if you were to answer any of my questions falsely, those answers could be used against you in a separate prosecution for perjury or for making a false statement?

THE DEFENDANT:  Excuse me, Your Honor?

THE COURT:  Since you've taken an oath, if you were to answer any of my questions falsely, your answers could be used against you in a separate prosecution for perjury or for

making a false statement.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  What is your full name?

THE DEFENDANT:  John Ivey Waldrop.

THE COURT:  And how old are you?

THE DEFENDANT:  Seventy-five.

THE COURT:  And how far did you go if school?

THE DEFENDANT:  Where did I go to school?

THE COURT:  No, how far did you go?  Did you go to high school or college?

THE DEFENDANT:  High school, college and then medical school and then residency training in orthopedic surgery.

THE COURT:  Got it.  Have you ever been treated or hospitalized for any type of mental illness?

THE DEFENDANT:  No, ma'am.

THE COURT:  Have you ever been treated or hospitalized for any kind of addiction, like drug or alcohol addiction?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  When was that?

THE DEFENDANT:  Back in about 1980, I went through a program for alcoholism at a facility in Georgia.

THE COURT:  Okay.  Have you taken any drugs or medicine or pills or had any alcoholic drinks in the past two

days?

THE DEFENDANT:  No, ma'am.

MR. FISHMAN:  Judge, he's on a lot of medications, but not the kind I think the Court is referring to.  But I just want the record to be clear.

THE COURT:  What kind of medications are you on now?

THE DEFENDANT:  I take medications for my heart and diuretics for my swelling.  I take medicines for my diabetes including pills and insulin.  I take medicine for controlling my diet, B2s.  I take an injection to help me with diet and losing my weight and I have lost ten pounds and I take a sleeping medication.

THE COURT:  Do any of those medications interfere with your ability to understand what's going on in court today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  Is your mind clear today?

THE DEFENDANT:  Ma'am?

THE COURT:  Is your mind clear today?

THE DEFENDANT:  Yes.  My hearing is not clear, but my mind is clear.

THE COURT:  All right.  Mr. Fishman, have you discussed this case with your client?

MR. FISHMAN:  We have, Judge.  We've had a long opportunity to discuss this case and I'm satisfied that this

plea agreement is in his best interest.

THE COURT: Okay. Are you confident that he understands the rights he will be giving up by pleading guilty today?

MR. FISHMAN: I am, as long as he can hear it.

THE COURT: Mr. Waldrop, feel free to let me know. I'm not always good about using the mic?

THE DEFENDANT: Okay.

THE COURT: And, Mr. Fishman, have you discussed the sentencing guidelines and how they would work in this case with your client?

MR. FISHMAN: We have, Judge.

THE COURT: And have you advised him of the maximum sentence and fine that could be imposed in this case?

MR. FISHMAN: Fully.

THE COURT: Mr. Waldrop, have you seen a copy of the indictment with the charges in this case?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you fully discussed the charges and the case in general with your attorneys?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. In Count One of the indictment you are charged with conspiring to smuggle goods into the United States, specifically preserved wildlife in or about from January 2016 to December 2020.

Can the Government put on the record what the elements of that charge are?

MS. KARAMIGIOS: Yes, Your Honor.

MR. CONNORS: For Count One of the indictment, the necessary elements are: One, that the defendant entered into an agreement with one or more persons to violate a law, in this case the Endangered Species Act and smuggling goods into the United States; two, that one of the defendants committed an overt act in furtherance of that agreement; three, that one of those overt acts took place here in the Eastern District of New York.

THE COURT: And then Count Five of the indictment charges that you violated the Endangered Species Act by knowingly and intentionally importing wildlife and failing to file one or more declarations required for that importation and I think this relates to a May 15th of 2020 importation of a Levant sparrowhawk.

Can you put on the record what the elements of that charge are?

MR. CONNORS: Yes. In this case the defendant knowingly imported merchandise into the United States, in this case the Levant sparrowhawk; two, that the sparrowhawk being wildlife required declarations specifically to Customs, the U.S. Fish and Wildlife Service and because of its protection under an international treaty, a special permit; three, that

the defendant did not obtain any of those permits and that he knew that he was required to do so.  And that took place here in the Eastern District of New York.

THE COURT:  Mr. Waldrop, do you understand those charges?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you understand what the Government just explained it would be required to prove if there were a trial in this cases?

THE DEFENDANT:  Ma'am?

THE COURT:  Did you hear when the attorney for the Government was explaining what he would be required to prove if there were a trial; do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Have you had enough time to discuss with your attorney whether or not to plead guilty to the charges in this case?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And are you fully satisfied with the counsel, representation and advice that you've gotten in this case from your attorneys?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  So, I want to go over your right to a trial and the other rights which you'll be giving up if you plead guilty in this case.  First, you have the right to

plead not guilty. Nobody can be forced to plead guilty to a criminal charge. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: If you pled not guilty, you would have the right to a speedy and a public trial by a jury. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: At a trial, you would be presumed to be innocent and the Government would have to prove your guilt beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: At a trial you would have the right to the assistance of counsel for your defense. Are you retained in this case?

MR. FISHMAN: We are, Your Honor.

THE COURT: You have attorneys who you've retained to represent you and they can represent you in this case at the trial and at every other stage of the proceedings. In addition, if at some point you were unable to afford counsel, I would appoint a lawyer to represent you at a trial and at every other stage of the case. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You would have the right at a trail to see and to hear all of the witnesses and to have them cross-examined on your behalf. Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  At trial you would have the right not to testify unless you decided that you wanted to testify as part of your defense.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  At a trial you would have the right to compel witnesses to come to court to testify as part of your defense.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  At a trial if you decided not to testify or not to put on any evidence at all, those facts could not be used against you and I would instruct the jury of that.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you enter a plea of guilty today and if I accept your plea, there will be no trial and you will have waived or given up all the rights that I just described.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you plead guilty today I will simply enter a judgment of guilty on the basis of your guilty plea and the Government will be freed of any obligation to prove your guilt.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  If you plead guilty I will also have to

ask you some questions about what you did in order to satisfy myself that you are guilty of the charges that you are pleading guilty to and you will have to answer my questions and acknowledge your guilt.  In that way, you'll be giving up your right not to incriminate yourself.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you have any questions about any of the rights I just explained?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you willing to give up your right to a trial and all the other rights that I just discussed by pleading guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I want to go over the plea agreement in this case.  So, I have in front of me a plea agreement that's been marked as Court Exhibit 1.  It looks like on the last page there's -- on page ten, it's the signature page, and there's a signature line for you and then a line for your attorney below it.  Did you sign this document?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Did you have the opportunity to read and discuss the agreement with your lawyers before you signed it?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And did you have enough time to do that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Did you understand the plea agreement before you signed it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any questions about the agreement as we sit here today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Does this agreement represent your entire understanding with the Government?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Has anybody made any promise or assurance that's not in the agreement in order to persuade you to accept the plea agreement?

THE DEFENDANT:  Could you --

THE COURT:  Has anybody made any promise to you or given you any assurance that's not in the agreement itself in order to persuade you to accept the plea agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone threatened you in any way to get you to accept the plea agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Mr. Fishman, were all the formal plea offers that you received in this case conveyed to your client?

MR. FISHMAN:  They were.  We were in frequent

communication with Dr. Waldrop.

THE COURT:  So I want to discuss what the charges are in this case.  I want to go over the possible penalties associated with these two charges.  So, Count One carries a maximum term of imprisonment of five years.  There's no mandatory minimum term of imprisonment and then Count Six -- sorry, Count Five, carries a maximum term of imprisonment of six months.  It does not have a mandatory minimum term of imprisonment either.

As to supervised release Count One carries a maximum possible term of supervised release of up to three years.  Supervised release refers to a period of time when you would be subject to supervision by the Probation Department after completing any term of imprisonment.  If you are on supervised release, you would have to follow the rules of supervised release and if you violated those rules, you could be sent back to prison without a jury trial for an additional period of up to two years on Count One without any credit for the time that you previously spent in prison and without any credit for time that you had spent on post-release supervision.  In other words, if you violate the conditions of supervised release you can receive additional time in prison.

So, Count One carries a maximum term of supervised release of three years and then Count Five carries a maximum term of supervised release of one year.  As to Count One, if

you were to violate the terms of your supervised release, you could be sent back to prison for an additional period of up to two years; and as to Count Five if you violated the conditions of supervised release, you could be sent back to prison for up to one year.  Do you understand all of that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Count One carries a maximum possible fine of either $250,000 or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than yourself, whichever is greater. And then Count Five carries a maximum possible fine of $25,000 or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss, whichever of those is greater.

I understand from the plea agreement that both you and the Government are agreeing to recommend a fine of $900,000 which you and the Government are agreeing is the amount of pecuniary gain to yourself in this case.

Do you understand all of that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In addition, on Count One there's a mandatory special assessment that I have to impose of $100 and then on Count Five there is an a mandatory special assessment of $10.  And then I think the final penalty associated with this crime is forfeiture.

In this plea agreement you are agreeing that you

obtained property that's subject to forfeiture and you are agreeing the forfeiture of all right and interest in certain property that's listed as an attachment to your plea agreement.

So, I have that here and it looks like an Excel document with 779 entries and then a table; is that right?  Am I looking at the right thing?

MS. KARAMIGIOS:  It is, Your Honor, and I have hard copies for defense counsel if you want to review a copy briefly.  It's the appendix.  It was sent electronically.

MR. FISHMAN:  It's fine, Judge.

THE COURT:  You all talked about this document before?

MS. KARAMIGIOS:  The Government provided electronically.

MR. FISHMAN:  It isn't quite in the same form that I saw it, but I'm satisfied with Ms. Karamigios' representation.

THE COURT:  So, Mr. Waldrop, this document is the document that is part of your plea agreement that you're guaranteeing describes property that's subject to forfeiture and it sounds like you've seen it, but in a slightly different format.  I just want to make sure we're all on the same page. Can you share the document with your client.

MR. FISHMAN:  For the record, Judge, when they seized the material from Dr. Waldrop's house, first pursuant

to a search warrant and then because they didn't get everything the first time they came back, with Dr. Waldrop's and our cooperation, we've agreed to forfeit all of the things they took, regardless of their provenance, regardless of their legality or illegality and we're satisfied that this is the appropriate list of those items.

THE COURT: All right. Because I think that -- just, under the agreement you're agreeing to forfeit this property. You're agreeing the property represents property constituting or derived from proceeds obtained as a result of the offense that's been charged in Count One or merchandise introduced into the United States in violation of such offense or the value thereof or property, real or personal, constituting or derived from proceeds of the offense or fish or wildlife or plant taken, sold, purchased, offered for sale, transported, delivered, received, carried, shipped, exported or imported in violation of Chapter 35 of Title 16, or guns or traps or nets or other equipment -- that's -- and other means of transportation, it doesn't seem like it's any of those. Or is substituted assets that are forfeitable. That's what the agreement says about that property.

MR. FISHMAN: Judge, to be clear, we don't have a complete catalog other than this of everything that they took, but we have agreed in the interest of both efficiency and to make sure that there were no mistakes, either by the agents or

by Dr. Waldrop, that everything that was seized from
Dr. Waldrop -- and not everything was in an illegal piece of
merchandise.  Everything that they took he's forfeiting.

THE COURT:  All right.  Well, all I've got to make
sure is that we're on the same page as the plea agreement and
what it means and that's what it says in the property that it
describes.

Any questions about that, Dr. Waldrop?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  Are you a citizen of the
United States?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So then there's no immigration matters
for us to go over.  Do you understand all of the possible
consequences of the guilty plea that I've just explained?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  So I wanted to talk briefly about
the sentencing guidelines.  So, it sounds like you've
discussed them with your attorney but the sentencing
guidelines set out guidelines for judges to follow in deciding
on the sentence in a criminal case.  The guidelines are
advisory which means I do not have to follow them, but I will
consider them along with all the facts and circumstances of
your case in deciding on a sentence.

Have you and your attorney discussed how the

guidelines might apply in your case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And has the Government estimated what the guideline range is likely FOB?

MS. KARAMIGIOS:  We have, Your Honor.  The guidelines we estimate on Count One are 37 to 46 months, which assumes a three-level reduction for acceptance of responsibility at the time of sentencing and a criminal history category of one.  The guidelines don't apply to Count Five because it's a misdemeanor.

THE COURT:  All right.  Does the defense have a different estimate in this case?

MR. FISHMAN:  No, Your Honor.  We've stipulated to it in the plea agreement.

THE COURT:  What you should know, sir, these are estimates and they could be wrong.  I have to determine what the guidelines are in your case, but I can't do that until the Probation Department prepares a Pre-Sentence Report that describes all the facts and you and the Government have an opportunity to read that report and to challenge any facts that you think it gets wrong.  You can challenge any application of the guidelines that the probation officer recommends.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand that the sentence

I impose in this case could be different from any estimate that your attorney or the Government's attorney has given you?

THE DEFENDANT:  I didn't hear that.

THE COURT:  Sure.  So, the sentence that I impose in this case could be different from the sentence that your attorney and the Government's attorney have calculated under the guidelines.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.  I understand that.

THE COURT:  As you sit here today there's no guarantee of a particular guidelines range or a particular sentence.  Do you understand that if the guidelines range that the Probation Department calculates or that I calculate is different from the one that your attorneys advised you of or that the Government has advised you of, you won't be able to take your guilty plea back?

THE DEFENDANT:  Yes, Your Honor.  I'm not quite sure I understood the question.  I heard it, but I'm not sure I understood it.

THE COURT:  It might have had too many parts.  It could be that I will calculate the guidelines different he from the Probation Department -- it could be that either I or the Probation Department will calculate the guidelines differently than the estimate that we just went over.  If that happens, you won't be able to take your guilty plea back.  Do you understand that?

THE DEFENDANT:  I understand that.

THE COURT:  Okay.  And also if the ultimate sentence that I impose is different from what you hoped for or expect, you won't be able to take your guilty plea back.  Do you understand that?

THE DEFENDANT:  I understand that.

THE COURT:  You should also understand that there's no parole in the federal system.  Parole is just the release of a person from prison before the completion of their sentence under certain conditions.

So, if you are sentenced to prison you won't be released early on parole.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Under some circumstances you or the Government would have the right to appeal any sentence that I imposed in this case, but this plea agreement contains what's known as an appeal waiver under which you are waiving, or giving up, your right to appeal or collaterally attack any part of your sentence so long as I impose a sentence of 51 months or less in jail.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any questions about the rights that you are giving up if you plead guilty today or the possible penalties for this charge or these charges, the plea agreement or the nature of the charges or anything else

related to this case?

THE DEFENDANT:  No questions, Your Honor.

THE COURT:  Are you ready to plead guilty today?

THE DEFENDANT:  Yes, Your Honor.

MR. FISHMAN:  Judge, I do have one other thing that I think we should put on the record with the Court's permission.

THE COURT:  Yes.

MR. FISHMAN:  It's not binding on the court.  We will be requesting a sentence of probation and the Government has agreed not to oppose that request when it's made. Dr. Waldrop understands that that doesn't bind the Court, and the Court just made that quite clear, but I do want to point that out because of his age and other physical infirmities which relate to the medications you heard about, we will be making that request.

MS. KARAMIGIOS:  And, Your Honor, just so the record is abundantly clear, defense counsel is citing to language that is in the plea agreement.  It's written in the plea agreement.  It's not an extraneous agreement.

THE COURT:  Thanks for putting that on the record.

So are you ready to plead guilty today, Mr. Waldrop?

THE DEFENDANT:  I'm ready.

THE COURT:  Mr. Fishman, do you know of any reason why your client should not plead guilty today?

MR. FISHMAN:  I do not, Your Honor.

THE COURT:  So, Dr. Waldrop, what is your plea as to those charges, Counts One and Count Five?

THE DEFENDANT:  I'm sorry?

THE COURT:  What is your plea to Counts One and Five in this case?

THE DEFENDANT:  Guilty.

THE COURT:  Are you making that plea voluntarily and of your own free will?

THE DEFENDANT:  I am, Your Honor.

THE COURT:  Has anybody threatened or forced you to plead guilty in this case?

THE DEFENDANT:  I didn't understand that.

THE COURT:  Has anyone forced you or threatened you to plead guilty in this case?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Other than your agreement with the Government, has anybody made you any promise that caused you to plead guilty in this case.

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anybody made any promise to you, aside from the one that your attorney just described about the request he's going to make and the Government is not opposing that request, aside from that has anybody may any promises to you about sentencing?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  So, what is it that you did that makes you guilty of the Counts One and Five in this case?

MR. FISHMAN:  With the Court's permission he has a short statement.

THE COURT:  Sure.

THE DEFENDANT:  From approximately January 2016 until 2020, I purchased a substantial number of taxidermy birds and preserved eggs through eBay, Etsy and other online dealers and I arranged for the items that I purchased to be shipped to the United States without appropriate documentation.  Those bird and eggs included wildlife that is prohibited by the laws of the United States.

I made these purchases because I was a collector, but never for any commercial gain.  In fact, I never re-sold any of the items I bought.  At the time I did these things, I did them knowingly and voluntarily.  Finally, Your Honor, I want to apologize to the Court for engaging in this behavior. I have always been a law-abiding citizen and am embarrassed and ashamed to be here today.

I want to apologize to my very good friend Toney Jones for getting him involved in this difficulty.  I can tell you and him how sorry it makes me that he has to be here with me today.

THE COURT:  Okay, thank you.  I take it there's no

dispute that some of these items passed through the Eastern District of New York?

MR. FISHMAN: We stipulate to that, Judge.

THE COURT: Okay. Any further allocution the Government thinks is necessary?

MS. KARAMIGIOS: We would just add, Your Honor, that for Count Five, the Government would be able to prove at trial that on May 15, 2020 the defendant imported a Levant Sparrow hawk as alleged in the indictment without the appropriate documentation knowing that he needed that documentation.

THE COURT: Is that right, that on that date you imported a Levant sparrowhawk into the United States?

THE DEFENDANT: I didn't quite understand, Your Honor.

THE COURT: The indictment in Count Five charges that on May 15th of 2020 you imported a Levant sparrowhawk into the United States and didn't file a declaration that was required about that; is that correct?

THE DEFENDANT: That's correct.

THE COURT: Okay. All right. So based on my observations of Mr. Waldrop and his demeanor in court and his answers to my requests and his representations of his attorneys, I find that he is fully competent and capable of entering an informed plea; that he's aware of the nature of the charges and the consequences of a guilty plea; and that

the plea is knowing and voluntary and supported by an independent basis in fact containing the essential elements of the offense.  So I accept the plea of guilty to Counts One and Five.

So, the next step is for the Probation Department to prepare a pre-sentence investigation report.  You'll be asked to give information for that report and your attorney can be present at the interview if you like.  After, that your counsel and you will have the opportunity to read that report and to make any objections in advance of sentencing if there are any facts that the report gets wrong.

Mr. Chan, do we have a date for sentencing in this case?

THE COURTROOM DEPUTY:  Counsel, how about November 13th at 12:30?  It's a Wednesday; November 13th at 12:30.

MR. FISHMAN:  At this moment, that looks fine for me.  That's fine with the defense, Your Honor.

THE COURT:  Great.  So we'll set November 13th for sentencing.

Did you say 12:30, Mr. Chan?

THE COURTROOM DEPUTY:  12:30.

THE COURT:  At 12:30.

So, you will continue to be out on bail between now and sentencing on November 13th.  You have to follow the same conditions that the magistrate set when you first appeared in

this case and then you have to come back to court for sentencing which should be on November 13th.

Sometimes there's a delay in preparing the presentence investigation report and we have to move the date, but for now that's the date and your attorney will let you know if the date changes.

Anything else?

MR. FISHMAN:  If I may, Dr. Waldrop's passport has been in the custody of, I assume, Pretrial Services since the time of his initial charge in this case.  Obviously -- to me, he doesn't seem remotely like a flight risk.  We've reached a plea.  I realize the Court is not bound by the recommendation, but the odds of Dr. Waldrop fleeing at this stage of his life -- he has substantial property in Alabama and in Georgia.

We are willing to increase the bond, if necessary; but I would like to ask the Court to direct that his passport be returned.  He has a small property in Panama that he has never visited.  His son has visited to go fishing.  He'd like to do that with his son and his grandchildren if he can.  We would keep the Government and the Court apprised of any travel.  I can't imagine he's really a flight risk.

THE COURT:  I think you need to change the conditions of bail.  Generally, what I like is if you talk to the Government and to Pretrial and often they will tell me no objection and then I'll so order it.  If you put in a letter

after you talk to Pretrial and the Government, if you are all in agreement, I am happy to so order it.  If there is a disagreement, we can figure out how to handle that.

MR. FISHMAN:  Thank you, Judge.

THE COURT:  Sure.  Anything else for us to us to take up, today?

MS. KARAMIGIOS:  Not from the Government.  Thank you, Your Honor.

MR. FISHMAN:  Nothing further.

THE COURT:  Thank you.

(Matter adjourned.)

- ooOoo -